IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| PATRICK A. TAYLOR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 2:21-cv-02028-TLP-tmp |
| v. ) | |
| ) | JURY DEMAND |
| D.R.T. DAVIS, Detention Response Team, ) | |
| D.R.T. BRADFIELD, Detention Response ) | |
| Team, D.R.T. ELLIOT, Detention Response ) | |
| Team, and MEDICAL DEPT., At 201 Poplar ) | |
| Ave. Memphis, TN 38103, ) | |
| ) | |
| Defendants. ) | |

**ORDER MODIFYING THE DOCKET, PARTIALLY DISMISSING THE COMPLAINT,
GRANTING LEAVE TO AMEND, AND DENYING PENDING MOTIONS**

Pro se Plaintiff Patrick A. Taylor sued Defendants D.R.T. Davis, D.R.T. Bradfield, D.R.T. Elliott, and Defendant Medical Dept. at 201 Poplar Ave. Memphis, Tennessee.[1] (ECF No. 1.) Plaintiff is proceeding in forma pauperis. (ECF Nos. 2 & 4.) Plaintiff moves to appoint counsel. (ECF Nos. 5 & 8.) And Plaintiff moves for transfer to the Tennessee Department of Corrections ("TDOC"). (ECF No. 9.)

For the reasons below, the Court **DISMISSES** the complaint **IN PART** and **GRANTS** Plaintiff leave to file an amended complaint within thirty days from the entry of this order in accordance with the requirements set forth below. The Court respectfully **DIRECTS** the Clerk

---

[1] Plaintiff is an inmate at the Shelby County Criminal Justice Center ("Shelby County Jail"), located at 201 Poplar Avenue in Memphis, Tennessee. His booking number is 20105251.

to modify the docket by adding Shelby County as a Defendant.  Lastly, the Court **DENIES** Plaintiff's pending motions for appointment of counsel and for transfer to the TDOC.

## BACKGROUND

According to the complaint, three members of the Shelby County Jail's Detention Response Team ("DRT")—Defendants Davis, Bradfield, and Elliot ("DRT Defendants")—assaulted Plaintiff in a staff bathroom.  (ECF No. 1 at PageID 2.)  He alleges that he could not defend himself because the officers handcuffed him before he assault.  (*Id*.)  Plaintiff also asserts that the Jail's medical department, which Plaintiff also named as a Defendant, committed medical malpractice by not following protocol.  (*Id.*)  Plaintiff states that he has "blurry vision due to the assault."  (*Id.* at PageID 3.)  In relief, Plaintiff requests $2,700,000 in compensatory damages.  (*Id.*)

Plaintiff attached various documents to the complaint, including inmate grievance forms and handwritten notes from Plaintiff.  According to these documents, correctional officers conducted a shakedown on Plaintiff's level in March 2020, apparently because of a "pod smoking."  (ECF No. 1-3 at PageID 11–12.)  Two corrections officers strip searched Plaintiff.  (ECF No. 1-1 at PageID 5.)  Plaintiff claims that three DRT officers stopped him on the way back to his cell.  (*Id.*)  The DRT officers then handcuffed Plaintiff and escorted him back to the strip search room.  (*Id.*)

According to Plaintiff, once there, the three DRT officers began to assault him, "one punching [him] in the . . . chest, one hitting [him] in [the] lower stomach, and the older D.R.T was striking [him] in the face."  (*Id.*)  Plaintiff states that the DRT officer striking him in the face "struck [him] [to] the point that the other D.R.T. Member had to pull the older D.R.T. officer off [him]."  (*Id.*)  Then the DRT officers told Plaintiff they would return to see Plaintiff if he said

2

anything. (*Id.*) Plaintiff says he tried to seek medical attention and was denied. (*Id.*) Plaintiff filed a grievance a few days later. (*Id.* at PageID 4.) Plaintiff alleges that in April 2020 one of the DRT members who committed the assault threatened to kill Plaintiff. (*Id.* at PageID 7.)

Plaintiff also attached an interoffice memo written by Shelby County Sheriff's Office's ("SCSO") Lieutenant T. Anderson related to Plaintiff's complaint about the incident. (ECF No. 1-3 at PageID 11.) According to the memo, Plaintiff had argued with the Jail's staff after the pod shakedown. (*Id.*) The memo also states that officers overheard other inmates "encourag[ing] [Plaintiff] to complain about having chest pains so [he] could go to medical in order to state that D.R.T. inflicted this injury." (*Id.*) It then says that the Jail's medical personnel did not see any of the "facial … bruises and swelling" Plaintiff claimed to have and noted only the complaints of chest pain. (*Id.*) But Plaintiff asserts that the nurse at the Jail's medical department "saw the bruises and marks on [his] chest [and] stomach" and that "she couldn't miss how swollen [Plaintiff's] face was when she looked at [him]." (ECF No. 1-4 at PageID 16.) Plaintiff alleges that he asked the nurse to take pictures of his injuries, and she declined. (*Id.*)

After Plaintiff appealed the grievance ruling, SCSO Captain Dotson reviewed surveillance footage and concluded that the shakedown occurred "without incident" related to Plaintiff. (ECF No. 1-6 at PageID 21.)

## **LEGAL STANDARDS**

Courts have to conduct screenings for every civil complaint "in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). When a court screens a complaint, it has to dismiss the complaint or any portion of it that "is frivolous, malicious, or fails to state a claim upon which relief may be granted" or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §

3

1915A(b).  Courts apply the same level of screening to all civil complaints filed by plaintiffs proceeding in forma pauperis.  28 U.S.C. § 1915(e)(2)(B); *see also In re Prison Litig. Reform Act*, 105 F.3d 1131, 1134 (6th Cir. 1997) ("The requirements of § 1915(e)(2) overlap the criteria of § 1915A.").  Under the in forma pauperis screening provision, the court must "dismiss the case at any time" if it finds such a deficiency.  28 U.S.C. § 1915(e)(2)(B).

Under these screening provisions, courts determine whether a complaint states a claim upon which relief may be granted using the same standard it uses to evaluate a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, as stated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  *See Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010).  Under this standard, the court accepts as true the complaint's "well-pleaded" factual allegations and determines whether they "plausibly suggest an entitlement to relief." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681); *see also Barnett v. Luttrell*, 414 F. App'x 784, 786 (6th Cir. 2011) ("To avoid dismissal, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (internal quotation marks omitted)). "A claim is plausible on its face if the 'plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678).  But the court need not accept as true any conclusory allegations.  *Iqbal*, 556 U.S. at 679.  With that in mind, every legal conclusion in a complaint "must be supported by factual allegations." (*Id.*)

Courts liberally construe pro se complaints and hold them "to less stringent standards than formal pleadings drafted by lawyers." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)).  But even pro se complaints must satisfy the

4

plausibility standard. *See Barnett*, 414 F. App'x at 786; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) ("[T]he lenient treatment generally accorded to pro se litigants has limits."). And pro se litigants still must adhere to the Federal Rules of Civil Procedure. *See Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir. 2011). Courts "have no obligation to act as counsel or paralegal to pro se litigants." *Thomas v. Romanowski*, 362 F. App'x 452, 456 (6th Cir. 2010) (quoting *Pliler v. Ford*, 542 U.S. 225, 231 (2004)). And courts are not "required to create" a pro se litigant's claim for him. *Payne v. Sec. of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003) (citations omitted).

## ANALYSIS

I.  **Plaintiff's Complaint**

To begin with, the Court construes the complaint as asserting claims under 42 U.S.C. § 1983 for excessive use of force and deprivation of medical care.[2] To state a claim under 42 U.S.C. § 1983 a plaintiff must allege two elements: (1) "the deprivation of a right secured by the Constitution or laws of the United States," and (2) "the deprivation was caused by a person acting under color of state law." *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003) (quoting *Ellison v. Garbarino*, 48 F.3d 192, 194 (6th Cir. 1995)).

---

[2] It is unclear whether Plaintiff seeks to assert state law claims for medical malpractice or assault under Tennessee law. If so, those claims cannot support a claim under § 1983, a statute addressing only violations of federal rights. *See Laney v. Farley*, 501 F.3d 577, 580 n.2 (6th Cir. 2007) ("Allegations of state law or state constitutional violations will not support a § 1983 claim." (citing *Neinast v. Bd. of Trs. of the Columbus Metro. Library*, 346 F.3d 585, 597 (6th Cir. 2003); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 314 (6th Cir. 2005))); *see also Pethtel v. State of Tenn. Dep't of Child. Servs.*, No. 3:10-cv-469-TAV-HBG, 2020 WL 6827791, at *8 (E.D. Tenn. Nov. 20, 2020) ("Plaintiffs cannot assert a § 1983 claim for violations of state policy or state law, as § 1983 only protects federally created rights."); *Wilkins v. Kawalski*, No. 1:20-CV-1057, 2021 WL 1015914, at *3 (W.D. Mich. Mar. 17, 2021) ("To the extent that Plaintiff raises a claim based on state policy or law, he is not entitled to relief under § 1983.").

### A. Plaintiff's § 1983 Claims Against Shelby County

Plaintiff asserts claims against the DRT Defendants and Defendant Medical Dept. at 201 Poplar Ave. Memphis, Tennessee, an address which the Court noted above corresponds to the Shelby County Jail. For starters, Plaintiff cannot maintain a § 1983 claim against the Shelby County Jail or its Medical Department, because neither qualifies as a "person" subject to suit under § 1983. *See Marbry v. Corr. Med. Serv.*, No. 99-6706, 2000 WL 1720959, at *2 (6th Cir. Nov. 6, 2000) ("[T]he Shelby County Jail is not an entity subject to suit under § 1983." (citing *Rhodes v. McDannel*, 945 F.2d 117, 120 (6th Cir. 1991))); *Hix v. Tenn. Dep't of Corr.*, 196 F. App'x 350, 355 (6th Cir. 2006) ("the defendant medical departments are not 'persons' under § 1983"); *see also Morseman v. Hopkins Cnty. Jail Staff*, No. 4:21-CV-P108-JHM, 2022 WL 243903, at *2 (W.D. Ky. Jan. 25, 2022) ("[N]either '[county jail] staff members' nor the '[county jail] medical department' are subject to suit under § 1983[.]"); *Anderson v. Morgan Cnty. Corr. Facility*, No.: 3-14-cv-516-TAV-HBG, 2015 WL 7281665, at *3 (E.D. Tenn. Nov. 17, 2015) (collecting cases). And so the Court construes Plaintiff's claims against the Shelby County Jail's medical department as claims against Shelby County itself. *See Morseman*, 2022 WL 243903, at *2.

Similarly, if Plaintiff seeks to assert official-capacity claims against the DRT Defendants, the Court interprets them as claims against Shelby County. *See Arsan v. Keller*, 784 F. App'x 900, 909 (6th Cir. 2019) ("An official-capacity claim is just a claim against the municipality."); *see also Cady v. Arenac Cnty.*, 574 F.3d 334, 342 (6th Cir. 2009) ("In an official capacity action, the plaintiff seeks damages not from the individual officer, but from the entity for which the officer is an agent."); *Essex v. Cnty. of Livingston*, 518 F. App'x 351, 354 (6th Cir. 2013) ("[A]n official-capacity claim is merely another name for a claim against the municipality.").

This is because "[a] municipality is a 'person' under 42 U.S.C. § 1983, and so can be held liable for constitutional injuries for which it is responsible." *Morgan v. Fairfield Cnty.*, 903 F.3d 553, 565 (6th Cir. 2018) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)). But "[a] municipality cannot be held liable simply because one of its employees has committed a constitutional violation." *Andrews v. Wayne Cnty.*, 957 F.3d 714, 721 (6th Cir. 2020) (citing *Monell*, 436 U.S. at 694); *see also Bible Believers v. Wayne Cnty.*, 805 F.3d 228, 260 (6th Cir. 2015) ("Municipalities are not vicariously liable for the actions of their employees."). "A plaintiff raising a municipal liability claim under § 1983 must demonstrate that the alleged federal violation occurred because of a municipal policy or custom." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Monell*, 436 U.S. at 694). "A municipality 'may not be sued under § 1983 for an injury inflicted solely by its employees or agents.'" *Id.* (quoting *Monell*, 436 U.S. at 694).

The complaint here identifies no municipal policy or custom. And so even if Plaintiff sufficiently pleaded a federal violation, he has not alleged that any municipal policy or custom caused that violation. As a result, he cannot state a § 1983 claim against Shelby County. And the Court therefore **DISMISSES** Plaintiff's official-capacity claims against the DRT Defendants, Defendant Medical Dept., and Shelby County.

  **B.**  **Plaintiff's § 1983 Claims Against DRT Defendants**

The complaint does not convey whether Plaintiff brings his claims against the DRT Defendants—Defendants Davis, Bradfield, and Elliot—in their official or individual capacities. And "[a]bsent a specification of capacity, it is presumed that a state official is sued in his official capacity." *Northcott v. Plunkett*, 42 F. App'x 795, 796 (6th Cir. 2002) (citing *Wells*, 891 F.2d at 593); *see also Lavon Moore v. Hiram Twp.*, 988 F.3d 353, 359 (6th Cir. 2021) (emphasizing "the

7

importance of fair notice to the individual defendants" when finding that the pro se plaintiff "brought his claims against the defendants in their official capacities only." (citing *Wells*, 891 F.2d at 594)). For Plaintiff's benefit, the Court will address the sufficiency of his claims against the DRT Defendants in their individual capacities.

"In order to hold individuals liable in their individual capacities under § 1983, a plaintiff must show that each defendant was personally involved in the alleged constitutional deprivations." *Stahl v. Coshocton Cnty.*, 754 F. App'x 335, 343 (6th Cir. 2018) (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). "Persons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior." *Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012) (citing *Murphy v. Grenier*, 406 F. App'x 972, 974 (6th Cir. 2011) ("Personal involvement is necessary to establish section 1983 liability"); *Gibson v. Matthews*, 926 F.2d 532, 535 (6th Cir. 1991) (noting that personal liability "must be based on the actions of that defendant in the situation that the defendant faced, and not based on any problems caused by the errors of others, either defendants or non-defendants")). The Court now turns to the medical claims.

      **i.    Deprivation of Medical Care**

As stated above, Plaintiff asserts a claim under § 1983 for the deprivation of medical care.[3] But he makes no allegations that the DRT officers (the ones who allegedly assuaulted him) had anything to do with his alleged lack of medical care. So the Court does not construe the complaint as asserting these medical claims against the DRT Defendants. None of the

---

[3] As noted above, Plaintiff also asserts that the Jail's medical staff committed medical malpractice. But even if supported by factual allegations, a claim for medical malpractice cannot support a claim under § 1983. *See Laney*, 501 F.3d at 580 n.2; *see also Pethtel*, 2020 WL 6827791, at *8; *Wilkins*, 2021 WL 1015914, at *3.

allegations related to Plaintiff's medical care involve the DRT Defendants. Plaintiff instead attributes the relevant conduct for these claims to the Jail's medical staff. But as stated above, the Jail's medical department is not a "person" subject to suit under § 1983. *See Marbry*, 2000 WL 1720959, at *2; *Hix*, 196 F. App'x at 355; *Morseman*, 2022 WL 243903, at *2; *Anderson*, 2015 WL 7281665, at *3. And, even if this Court construed the claims against Shelby County, Plaintiff has identified no municipal policy or custom. For this reason, Plaintiff cannot maintain this claim against Shelby County. *See Monell*, 436 U.S. at 694. As a result, Plaintiff fails to state a claim for deprivation of medical care. And the Court therefore **DISMISSES** this claim.

Next the Court will consider the remaining excessive force claim.

### ii.     Excessive Force

For starters, it is unclear whether Plaintiff was a pretrial detainee or convicted prisoner at the time of the events underlying the complaint. This matters because the Plaintiff's status dictates which constitutional amendment applies. For example, the Eighth Amendment "proscribes 'the unnecessary and wanton infliction of pain' against prisoners." *Taylor v. Davidson Cnty. Sheriff's Dep't*, 832 F. App'x 956, 959 (6th Cir. 2020) (quoting *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)). By contrast, "[t]he Due Process Clause [of the Fourteenth Amendment] protects a pretrial detainee from the use of excessive force that amounts to punishment." *Cretacci v. Call*, 988 F.3d 860, 869 (6th Cir. 2021) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015)).

The standards a court uses to evaluate a claim differs for each amendment. To establish excessive force in the Fourteenth Amendment context, "a pretrial detainee must show 'that the force purposely or knowingly used against him was objectively unreasonable.'" *Id.* (quoting *Kingsley*, 576 U.S. at 869). But an Eighth Amendment claim, on the other hand, "has both a

9

subjective and objective component." *Taylor*, 832 F. App'x at 959 (citing *Hudson*, 503 U.S. at 5). "The subjective component requires [a plaintiff] to show that the officers used force 'maliciously and sadistically for the very purpose of causing harm' rather than in a 'good faith effort to maintain or restore discipline.'" *Id.* at 959–60 (quoting *Hudson*, 503 U.S. at 6). Whereas "[t]he objective component requires [a plaintiff] to show that the amount of force used was 'sufficiently serious' to warrant protection under the Eighth Amendment." *Id.* (citing *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014)).

Another issue for the Court is the identity of the officers who allegedly assaulted Plaintiff. In this complaint, Plaintiff names the three DRT Defendants—Defendants Davis, Bradfield, and Elliot. (ECF No. 1 at PageID 2.) According to the "Statement of Claim" section of the complaint, Plaintiff "was assaulted by 3 members of the D.R.T. team while [he] was in handcuffs inside the staff bathroom." (*Id.*) The attachments to the complaint provide more details, but they rarely identify the DRT Defendants by name. Plaintiff generally refers to the DRT Defendants collectively or simply as a "D.R.T. Member" when referring to an individual. (ECF No. 1-1 at PageID 5.) For example, in his inmate grievance form, Plaintiff stated, "3 of the evening shift D.R.T. Members . . . assault[ed] me . . . one hitting me in the pit of my chest, one punching me in the lower stomach, and the older D.R.T. Member was hitting me in the face." (*Id.* at PageID 4.) He later alleges that one of the same DRT officers threatened him, but he does not identify the corresponding DRT Defendant. (*Id.* at PageID 7.)

In some scenarios, this form of collective pleading—referring to multiple defendants only as a single entity or group—can fail to satisfy basic pleading requirements and place the defendants on notice of the claims against them. *See Mann v. Mohr*, 802 F. App'x 871, 877 (6th Cir. 2020); *see also Frengler v. GM*, 482 F. App'x 975, 977 (6th Cir. 2012) ("Even a pro se

10

pleading must provide the opposing party with notice of the relief sought, and it is not within the purview of the district court to conjure up claims never presented."). True enough, Plaintiff is vague about the specific actions by each DRT Defendant. But the complaint alleges that each DRT Defendant punched Plaintiff while he was restrained in handcuffs. (ECF No. 1-1 at PageID 4.) And so Plaintiff has at least perhaps provided enough allegations of each DRT Defendant's personal involvement in the purportedly unconstitutional conduct. *See Stahl*, 754 F. App'x at 343; *Heyerman*, 680 F.3d at 647.

Without ruling on whether this excessive force claim survives screening, given the deficiencies the Court identified above, the Court will allow Plaintiff to amend his complaint to clarify his claims. And if Plaintiff chooses to amend, he should allege facts sufficient to state a plausible claim to relief against each Defendant identified in the complaint. In other words, Plaintiff should make clear what conduct he attributes to each DRT Defendant.

The Court will now further explain the requirements for amending the complaint.

**C.      Amendment Under the PLRA**

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a sua sponte dismissal under the Prison Litigation Reform Act, 28 U.S.C. §§ 1915, et seq. ("PLRA"). *See Lucas v. Chalk*, 785 F. App'x 288, 291 (6th Cir. 2019); *see also LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013) ("[U]nder Rule 15(a) a district court can allow a plaintiff to amend his complaint even when the complaint is subject to dismissal under the PLRA."). Courts need not grant leave to amend when a plaintiff cannot cure a deficiency in his pleading. *See Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 640–41 (6th Cir. 2018); *see also McDonald v. Lasslett*, No. 18-2435, 2019 WL 2592572, * 2–3 (6th Cir. May 28, 2019) ("[A]lthough a district court may allow a plaintiff to amend his complaint before entering a sua

sponte dismissal, it is not required to do so, and leave to amend should be denied if the amendment would be futile." (quoting *Bishawi v. Ne. Ohio Corr. Ctr.*, 628 F. App'x 339, 347 (6th Cir. 2014))). But the Sixth Circuit generally prefers "liberality" in allowing plaintiffs to amend, even at the screening stage under the PLRA. *See Lucas*, 785 F. App'x at 292 ("Generally, '[i]f it is at all possible that the party . . . can . . . state a claim for relief, the court should dismiss with leave to amend.'" (quoting *Brown v. Matauszak*, 415 F. App'x 608, 614 (6th Cir. 2011))).

With this in mind, the Court **GRANTS** Plaintiff leave to file an amended complaint within thirty days from the entry of this order under the guidelines set forth below.

The Court reminds Plaintiff that an amended complaint must be complete without reference to an earlier pleading. Plaintiff must sign the amended complaint, and the text of the amended complaint must allege enough facts to support each claim without reference to any other document. Plaintiff must identify any exhibits by number in the text of the amended complaint and he must attach them to the amended complaint. If Plaintiff does not timely amend, the Court will permit the case to proceed only as to Plaintiff's § 1983 claim for excessive force.

## II.    Motions to Appoint Counsel

Plaintiff moves for appointment of counsel based on his in forma pauperis status. (ECF Nos. 5 & 8.) Plaintiff states that because of his indigency, he "is not capable of seeking legal counsel himself." (ECF Nos. 5 at PageID 38; 8 at PageID 45.) While the Court may appoint counsel for indigent litigants under 28 U.S.C. § 1915(e)(1), "[t]he appointment of counsel in a civil proceeding is not a constitutional right." *Lanier v. Bryant*, 332 F.3d 999, 1006 (6th Cir. 2003); *see also Shepherd v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2002); *Lavado v. Keohane*,

992 F.2d 601, 605-06 (6th Cir. 1993).  Rather, appointment of counsel is "a privilege that is justified only by exceptional circumstances." *Lavado*, 992 F.2d at 606 (internal quotation marks and citation omitted).  Plaintiff alleges no exception circumstance justifying the appointment of counsel here.  Given the complexity of the factual and legal issues at play here, Plaintiff has not shown that appointment of counsel is warranted.  The Court therefore **DENIES** Plaintiff's motions to appoint counsel.

### III.     Motion for Transfer to TDOC Custody

Plaintiff moves for transfer to the TDOC from the Shelby County Jail "due to the threat of [his] safety being that [he] was the victim [of] an assault and beaten by DRT staff [while] in handcuffs."  (ECF No. 9 at PageID 48–49.)  According to the motion, Plaintiff fears that the Shelby County Jail's officers and administrators will retaliate against him for filing this lawsuit.  (*Id.* at PageID 50.)  Plaintiff requests to serve out the remainder of his detention in a TDOC facility.[4]

Federal courts do not oversee housing assignments for inmates in State custody.  *See Meachum v. Fano*, 427 U.S. 215, 229 (1976) ("The federal courts do not sit to supervise state prisons, the administration of which is of acute interest to the States.").  Indeed, "[t]he Supreme Court has repeatedly warned that 'it is difficult to imagine an activity in which a state has a stronger interest, or one that is more intricately bound up with state laws, regulations, and procedures, than the administration of its prisons.'"  *Smith v. Dewine*, 476 F. Supp. 3d 635, 666 (S.D. Ohio 2020) (quoting *Woodford v. Ngo*, 548 U.S. 81, 94 (2006)).  And the courts are "ill equipped" to deal with the "complex and intractable" problems related to prison administration.

---

[4] As stated above, it is unclear whether Plaintiff is a convicted inmate or a pretrial detainee.  And Plaintiff does not state when his detention ends.

13

*Hanrahan v. Mohr*, 905 F.3d 947, 954 (6th Cir. 2018) (quoting *Procunier v. Martinez*, 416 U.S. 396, 405 (1974)). Because such problems "are peculiarly within the province of the legislative and executive branches of government," prison administration is "a task that has been committed to the responsibility of those branches." *Everson v. Mich. Dep't of Corr.*, 391 F.3d 737, 750 n.16 (6th Cir. 2004) (quoting *Turner v. Safley*, 482 U.S. 78, 84–85 (1987)). And consequently, when it comes to prison administration, "separation of powers concerns counsel a policy of judicial restraint." *Id.* (quoting *Turner*, 482 U.S. at 84–85).

What is more, an inmate in State custody has no constitutional right to confinement in a particular detention facility or housing assignment. *See Nunez v. FCI Elkton*, 32 F. App'x 724, 725 (6th Cir. 2002); *see also Sandin v. Conner*, 515 U.S. 472, 484-87 (1995); *Olim v. Wakinekona*, 461 U.S. 238, 245–46 (1983); *Williams v. Bezy*, 97 F. App'x 573, 574 (6th Cir. 2004). For these reasons, the Court **DENIES** Plaintiff's motion for transfer.

## **CONCLUSION**

For the reasons above, the Court **DISMISSES** Plaintiff's complaint **IN PART**. But the Court **GRANTS** Plaintiff leave to amend the complaint as to his claims against Shelby County and the DRT Defendants.[5] If he chooses to amend the complaint, Plaintiff must file it within thirty days from the entry of this order. If Plaintiff does not timely amend, the Court will permit the case to proceed only as to Plaintiff's § 1983 claims for excessive force against the DRT Defendants. The Court **DENIES** Plaintiff's pending motions.

**SO ORDERED**, this 7th day of March, 2022.

                                                    s/Thomas L. Parker
                                                    THOMAS L. PARKER
                                                    UNITED STATES DISTRICT JUDGE

---

[5] As explained above, the Shelby County Jail and its Medical Department do not qualify as "persons" subject to suit under § 1983. *See Marbry*, 2000 WL 1720959, at *2; *Hix*, 196 F. App'x at 355; *Morseman*, 2022 WL 243903, at *2; *Anderson*, 2015 WL 7281665, at *3.